UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61928-CIV-COHN/SELTZER

WILLIAM T.F. COWLEY,

    Plaintiff,

v.

SUNSET YACHT CHARTERS, INC.,

    Defendant.
_____/

**ORDER DENYING MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF JAMES W. ALLEN & MOTION TO PRECLUDE REFERENCE TO INAPPLICABLE STANDARDS**

**THIS CAUSE** is before the Court on Defendant Sunset Yacht Charters, Inc.'s Motion to Exclude and/or Limit the Testimony of James W. Allen & Motion to Preclude Reference to Inapplicable Standards [DE 24]. The Court has considered the motion, Plaintiff William T.F. Cowley's Response [DE 29], Defendant's Reply [DE 32], and the record in this case, and is otherwise advised in the premises.

**I. BACKGROUND**

This case arises out of Plaintiff's injuries allegedly sustained while working aboard Defendant's 85' private pleasure motor yacht, the *Astrelle*. According to the Complaint [DE 1], Plaintiff sustained his injuries on October 15, 2007, when he fell after repairing a broken windshield wiper. He continued to suffer pain and undergo various medical treatment after the incident.

The Complaint brings three counts against Defendant: Jones Act negligence (Count I); unseaworthiness (Count II); and failure to provide prompt and adequate

maintenance and cure (Count III).  Plaintiff seeks to introduce Mr. James W. Allen as an expert witness on the unseaworthiness count.  Mr. Allen submitted an Initial Report [DE 18] and a Supplemental Report [DE 24-1] stating his opinion that "the M/Y Astrelle was an unseaworthy vessel due to the workload and being undermanned," Initial Rep. at 5, and that the lack of handrails on the steps leading to the coach roof "creat[ed] another unseaworthy condition . . . by failing to provide a safe place to work," Supp. Rep. at 3.

## II. DISCUSSION

In the instant motion, Defendant requests that the Court: (1) exclude as untimely Mr. Allen's testimony regarding the lack of handrails on the *Astrelle*'s steps; (2) prohibit Mr. Allen from referencing the American Boat and Yacht Counsel ("ABYC") guidelines and the International Maritime Organization ("IMO") standards; and (3) preclude Mr. Allen from testifying as an expert relative to management and operations of the *Astrelle*. The Court will address each request in turn.

### A. Timeliness

Plaintiff submitted Mr. Allen's Initial Report on April 19, 2011.  Thereafter, on May 13, 2011, Plaintiff submitted Mr. Allen's Supplemental Report.  Defendant seeks to exclude the information regarding the lack of handrails contained in the Supplemental Report as untimely under the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida.

The Federal Rules and Local Rules require "a party [to] disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal

2

Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A); <u>see also</u> S.D. Fla. L.R. 16.1(k). "[T]his disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case . . ." Fed. R. Civ. P. 26(a)(2)(B). According to the committee notes on section 2 of Rule 26, "This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Advisory Committee Notes, 1993 Amendments, Fed. R. Civ. P. 26. Rule 26(e) requires a party who has made a Rule 26(a) disclosure to supplement the disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); <u>see also</u> Fed. R. Civ. P. 26(a)(2)(E) (requiring parties to supplement expert disclosures pursuant to Rule 26(e)).

The deadline for expert disclosures and initial reports in this case was April 19, 2011. <u>See</u> Fed. R. Civ. P. 26(a)(2)(D). On that date, Plaintiff submitted Mr. Allen's Initial Report. Three days later, at Plaintiff's deposition, Defendant revealed photographs depicting the *Astrelle*'s coach deck steps. Thereafter, Mr. Allen reviewed the deposition testimony and the photographs, and on May 11, 2011, he wrote his Supplemental Report, including an opinion regarding the lack of handrails on the *Astrelle*'s steps. Plaintiff emailed the Supplemental Report to Defendant on May 13, 2011 at 5:17 p.m. <u>See</u> Supp. Rep. Discovery closed on May 16, 2011. <u>See</u> Order Granting in Part and Denying in Part Motion for Enlargement of Time [DE 22].

3

Defendant seeks to exclude the information regarding the lack of handrails as untimely because it was submitted after the April 19, 2011 initial expert disclosure deadline and constituted "a new and previously undisclosed opinion, *i.e.* that the vessel was unseaworthy because the steps leading to the coach roof did not have a handrail." Mot. at 2.  However, the information regarding the lack of handrails was a proper supplement to Mr. Allen's Initial Report pursuant to the procedures outlined in Rule 26. Therefore, the Supplemental Report and the information regarding the *Astrelle*'s alleged unseaworthiness contained therein, including the statements regarding the lack of handrails, was not untimely.

Furthermore, even if this disclosure was untimely, any delay in disclosing Mr. Allen's opinion regarding the lack of handrails was both substantially justified and harmless.  Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added).  Mr. Allen's failure to include the information regarding the lack of handrails in his Initial Report was substantially justified because he did not know that the *Astrelle*'s steps lacked handrails until Defendant presented the pictures at Plaintiff's deposition, after Mr. Allen submitted his Initial Report.  Also, the timing of the information's disclosure did not unfairly prejudice Defendant because "Mr. Allen was *deposed on both his initial opinions and his supplemental opinions by Defendant's counsel*." Resp. at 6-7.  Defendant contends that the late disclosure was

4

prejudicial regardless of the fact that Defendant's counsel deposed Mr. Allen on both opinions because Defendant did not have sufficient time to designate a rebuttal witness on the handrail issue.  Yet, the deadline for designating a rebuttal witness had not passed when Defendant received Mr. Allen's Supplemental Report, and regardless, Defendant's own expert, Mr. Thomas Danti, submitted his own Supplemental Report [DE 30-1] on June 10, 2011, after reviewing Mr. Allen's Supplemental Rebuttal Report.  In Mr. Danti's report, as a direct response to Mr. Allen's opinion on the lack of handrails, Mr. Danti offered his own opinion "that there was no requirement for a handrail at the steps at issue."  Supp. Reb. Rep. at 3.  Therefore, the Court will not exclude the opinion testimony regarding the lack of handrails as untimely because the disclosure was timely pursuant to Rule 26 and Local Rule 16.1, and even if it were not timely, the disclosure was substantially justified and harmless.

### B. Applicability of Standards

Mr. Allen's reports reference the IMO standards and the ABYC guidelines.  Initial Rep. at 4; Supp. Rep. at 3.  Defendant seeks to exclude both references as inapplicable and more prejudicial than probative under Federal Rule of Evidence 403.

Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Defendant argues that Mr. Allen's use of the ABYC guidelines and IMO standards "raises the distinct danger that a jury might decide the case on an improper basis, *i.e.* application of these *inapplicable* standards."  DE 24 at 6.

5

1. ABYC Guidelines

Defendant argues that the ABYC standards are not binding on the *Astrelle* because their recommendations are "for all boats, associated equipment and systems manufactured or installed *after July 31st, 2007*," ABYC Standards § H-41 at 1 [DE 24-4], and the *Astrelle* was built in 1988.  Defendant also suggests the guidelines are inapplicable because the paragraph mentioned in Mr. Allen's report is limited to "Handhold Devises" and Weatherdecks intended to be used while underway, such as for handling ground tackle and docklines," see id. at 2, and there is no evidence apart from Mr. Allen's own words that the coach roof was a "weather deck intended to be used while the vessel was underway," Mot. at 5.  However, neither Plaintiff nor Mr. Allen disputes that the ABYC guidelines are not binding on the *Astrelle*.  The fact that they are not binding does not render the guidelines irrelevant.

Mr. Allen merely includes the guidelines as a reference to the industry standard he uses in his opinion.  As Plaintiff states, "It is proper for an expert to provide expert testimony as to what violates an industry standard in support of his opinion that there was [an] inherent seaworthiness condition aboard a Vessel.  This is exactly what Mr. Allen has done with regard to his use of the ABYC guidelines vis-à-vis the lack of handrails on the coach roof steps."  Resp. at 10.  The Court agrees.

Defendant quotes Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185, 189 (4th Cir. 1964), for the proposition that evidence of industry standards is improper in an unseaworthiness claim, but Bryant discusses trade custom, not industry standards.  Id. ("It is an established principle, however, that in negligence actions under the Jones Act, prevailing *trade customs* cannot furnish the legal standard of due care . . . .  This being

true, we fail to perceive any logical reason why *trade customs* should be permitted to form the legal standard of seaworthiness in actions under general maritime law." (emphasis added)).  In actuality, evidence of industry standard is not prohibited in a maritime law claim.  See, e.g., Pappas v. Potomac Party Cruises, Inc., Case No. 98-2212, 2000 WL 724054, at *3 (4th Cir. 2000) (allowing expert to reference ABYC guidelines in opinion as to a vessel's seaworthiness even when both parties' experts "admit[ted] that the standards they used in forming their testimony are not applicable as a matter of law."); Kiesel v. Am. Trading & Prod. Corp., 347 F. Supp. 673, 678 (D. Md. 1972) ("While this court is aware that a trade custom is not a measure of negligence or seaworthiness, . . . the evidence of prevailing industry standards may be considered as some evidence that the ship was not unseaworthy and that the defendant was not negligent in connection with the flaking of the springlines and the lighting in the area of the thwartships doorway.").  Therefore, the ABYC guidelines are applicable and relevant to this case, even if they do not bind the *Astrelle*.

Furthermore, the Court finds that the probative value of Mr. Allen's references to the ABYC guidelines are not substantially outweighed by the danger of prejudice, confusing the issues, or misleading the jury.  See Fed. R. Evid. 403.  Instead, like the Pappas Court, which found the ABYC guidelines persuasive, the jury might also find these guidelines persuasive.  Of course, Defendant's counsel will be free to argue that the guidelines are not applicable and to cross examine Mr. Allen in an attempt to diminish the weight and the applicability of the ABYC guidelines to the instant case.  The jury can then decide for itself whether the vessel was unseaworthy.  However, the Court will not exclude reference to the ABYC guidelines under Rule 403.

2. IMO Standards

Defendant seeks to exclude reference to the IMO standards as inapplicable because according to Mr. Allen's own testimony, these standards do not apply to the *Astrelle*. Mot. at 6-7 (citing Allen Dep. at 80:14-20 ("Q: But, again, [the IMO standards are] not applicable to the ASTRELLE, correct? A: That's correct.")). Plaintiff's Response does not offer any argument to contest Defendant's request. However, as discussed above, the fact that a standard is inapplicable as a matter of law does not render the standard altogether irrelevant or inadmissible as evidence. See Pappas, 2000 WL 724054, at *3. For the same reasons as discussed above, the prejudice derived from a reference to the IMO standards does not outweigh its probative value. Therefore, the Court will not exclude reference to the IMO standards under Rule 403.

### C. Mr. Allen's Qualifications and Methodology

Defendant argues that the Court should preclude Mr. Allen from offering an expert opinion on vessel design or on the operations and management of private pleasure yachts like the *Astrelle* because he lacks expertise in these areas and his methodology is not sufficiently reliable. Federal Rule of Evidence 702 controls determinations regarding the admissibility of expert testimony. See Fed. R. Evid. 702; see also Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005). Pursuant to Rule 702, trial courts perform a three-part inquiry to determine the admissibility of expert testimony and "[t]he party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Rink, 400 F.3d at 1292 (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)). Specifically, a court must determine the following:

8

1. Whether the expert is qualified to testify competently regarding the matters he intends to address;

2. Whether the methodology by which the expert reaches his conclusions is sufficiently reliable; and

3. Whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Quiet Tech. DC-8, Inc. v. Huerl-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003). District courts make such a determination "'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink, 400 F.3d at 1291 (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). Stated differently, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." Id. (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)). Defendant's motion challenges both Mr. Allen's qualifications and his methodology.

### 1. Qualifications

An expert witness may be qualified to testify and give his opinions by way of his knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Plaintiff seeks to offer Mr. Allen's testimony as evidence in support of the unseaworthiness claim. Mr. Allen's Initial Report describes him as an expert "in the field of marine safety consulting." Initial Rep. at 3. His Initial Report includes opinions that "the M/Y Astrelle was an unseaworthy vessel due to the workload and being undermanned." Id. at 5. He specifies that "this vessel would require at lest a three man crew at a minimum," id. at 4, and that when Defendant failed to provide a third crew member, it "willfully and

9

continually exposed its crew and passengers to unreasonable risk of physical harm," id. In his Supplemental Report, Mr. Allen compares Plaintiff's hours to the industry standard, Supp. Rep. at 2, and reiterates that the vessel lacked an adequate crew, id. at 2-3.  Additionally, in his Supplement Report, Mr. Allen states that due to the lack of a handrail, "it is apparent the steps or ladder leading to the coach roof do not comply with American Boat and Yacht Standard 41.5.2," id. at 3, which "creat[ed] another unseaworthy condition, aboard the M/Y Astrelle, by failing to provide a safe place to work.  This is an unsafe condition both at sea and in port," id.

At his deposition, Mr. Allen testified that his expertise is "in seamanship, boat handling, navigation on ships and boats." Allen Dep. at 8:19-20.  He has served as a master captain, expert seaman, and coast guard officer. See Allen Curriculum Vitae [DE 18-1].  According to his Curriculum Vitae, Mr. Allen has thirty years of experience in the coast guard serving as a Boatswains Mate and Chief Warrant Officer.  Allen C.V. at 1.  He has experience in "the operation, navigation, and maintenance of vessels ranging from ships to small craft, maintenance of docks, piers, and aids to navigation." Id.  Mr. Allen has inspected over 100 vessels like the *Astrelle* in an effort to make sure the vessels complied with the Federal safety standards.  Allen Dep. at 23:12-25; 24:1-19.  He has also "[c]onducted appropriate investigations when necessary, as well as inspected and issued citations for vessels . . ."  Allen C.V. at 1.  He is currently a marine safety consultant.  Id.

Based on this experience, Mr. Allen is qualified to issue his opinions as to whether the conditions on the *Astrelle* made the vessel unseaworthy, including whether the vessel was undermanned, whether Plaintiff was overworked, and whether the lack

of handrails contributed to the vessel's unseaworthiness. Defendant's argument that Mr. Allen has not previously captained a boat exactly like the *Astrelle* or testified on these precise issues, see Mot., is inapposite. Mr. Allen's opinion is based on his extensive experience and knowledge of the marine industry as well as the industry's safety requirements and industry standards, in addition to his understanding of the services performed on the vessel and the circumstances surrounding Plaintiff's actions on the vessel. Accordingly, the Court finds that Plaintiff has met his burden to prove by a preponderance of the evidence that Mr. Allen is qualified to testify competently regarding opinions contained in his Initial Report and Supplemental Report. See Rink, 400 F.3d at 1292; Quiet Tech. DC-8, Inc., 326 F.3d at 1340.

### 2. Methodology

To determine whether an expert's methodology is sufficiently reliable, the Court may make the following inquiries regarding the proposed expert's theory or technique:

1. Whether it can be (and has been) tested;

2. Whether it has been subjected to peer review and publication;

3. What is its known or potential rate of error; and

4. Whether it is generally accepted in the field.

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 145 (1999) (citations omitted). Notwithstanding, the Court has "substantial discretion" in deciding how to test an expert's reliability. Rink, 400 F.3d at 1292 (quoting United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999)).

Together, Mr. Allen's Initial Report and Supplemental Report provide a detailed accounting of his opinions and the basis for his conclusions premised upon his relevant

experience.  Defendant does not suggest that Mr. Allen's reports are untested, would fail peer review, or are subject to any kind of rate of error, nor does Defendant suggest that Mr. Allen's methods are unaccepted in the marine safety industry.  Rather, Defendant conclusively states, "there is nothing to suggest that he has employed any sort of reliable methodology in reaching his opinions.  Instead, he references inapplicable standards."  Mot. at 9.  Plaintiff responds that "[u]nlike other *Daubert* decisions, this case does not involve scientific, technical, or break-through type research, analysis and opinion, but instead involves the application of regimented seamanship principles."  Resp. at 13.  Mr. Allen has applied a methodology based on accepted seamanship principles applied to the issues in this case.  He compares the safety conditions on the *Astrelle* to his knowledge of the marine safety industry.  In forming his opinion, he evaluates the number of crew members, the number of hours Plaintiff worked, and the lack of handrails according to the applicable standards, and concludes that the vessel was unseaworthy.  Under the circumstances, the Court finds that Plaintiff has met his burden to prove by a preponderance of the evidence that Mr. Allen's methods are sufficiently reliable.  See Rink, 400 F.3d at 1292; Quiet Tech. DC-8, Inc., 326 F.3d at 1340.  Therefore, the Court will not preclude Mr. Allen from testifying as an expert.

### III. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Sunset Yacht Charters, Inc.'s Motion to Exclude and/or Limit

the Testimony of James W. Allen & Motion to Preclude Reference to Inapplicable Standards [DE 24] is **DENIED**;

2. Defendant's Motion in Limine to Preclude Reference to Inapplicable ABYC Guidelines and Higher Duties of Care [DE 50] is **DENIED as moot**;

3. Defendant's Motion in Limine to Preclude Reference to Inapplicable IMO Standards [DE 53] is **DENIED as moot**;

4. Defendant's Motion in Limine to Preclude the Untimely Handrail Opinion of Plaintiff's Expert, James W. Allen [DE 55] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of July, 2011.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF