UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61928-CIV-COHN/SELTZER

WILLIAM T.F. COWLEY,

    Plaintiff,

vs.

SUNSET YACHT CHARTERS, INC.,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant Sunset Yacht Charters, Inc.'s Motion for Summary Judgment [DE 23]. The Court has considered the motion, Plaintiff William T.F. Cowley's Response [DE 31], Defendant's Reply [DE 40], the parties' related submissions, and the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This case arises from injuries Plaintiff William T.F. Cowley sustained aboard the private pleasure motor yacht *Astrelle*. For over a dozen years, Plaintiff served as Captain of the *Astrelle*, and his wife, Jennifer M. Cowley, served as additional crew. The *Astrelle*'s owners were Charles and Ellen Collis. The Collises, through Defendant Sunset Yacht Charters, Inc., retained Plaintiff and Mrs. Cowley through the Cowleys' wholly owned and operated company, SeaSafe Consultants, Inc. ("SeaSafe").

The alleged incident occurred on October 15, 2007, while Plaintiff was at sea aboard the *Astrelle*, off the coast of Savannah, Georgia. Plaintiff recounts that the

vessel's center windshield wiper malfunctioned, so he proceeded outside to repair the wiper. Plaintiff describes the ensuing facts as follows: "[a]fter successfully completing the repair, Plaintiff began to dismount from the lower coach roof ledge, when the Vessel suddenly rolled violently and threw Plaintiff from the ledge to the ground. Plaintiff landed [] heavy on his feet, instantly feeling a significant 'pop' in his upper back as he fell backwards against the slanting deckhouse, hitting his head and neck." Compl. ¶¶ 26-27. After the incident, the pain continued to grow worse, requiring various medical treatments over the next few years. Ultimately, Plaintiff's employment on the *Astrelle* was terminated.

Plaintiff alleges that there was inadequate crew aboard the vessel, that he was overworked, and that the vessel's steps were unsafe. Plaintiff also claims that Defendant's negligence and the vessel's unseaworthiness caused his injury. Additionally, though the *Astrelle*'s owners paid Plaintiff's out-of-pocket medical expenses, he seeks more than just his out-of-pocket expenses. Further, the *Astrelle*'s owners paid Plaintiff maintenance at the rate of $50.00 per day for the days he did not receive regular employment wages, but Plaintiff contends that he is also entitled to maintenance payments for the days on which he earned regular wages.

Based on these facts, Plaintiff filed the instant action on October 12, 2010. See Complaint [DE 1]. The Complaint brings the following claims: Jones Act negligence (Count I); unseaworthiness (Count II); and failure to provide prompt and adequate maintenance and cure (Count III). Id. On May 20, 2011, Defendant filed its Motion for Summary Judgment on all three counts.

2

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

3

## III. ANALYSIS

Defendant makes the following arguments in its motion for summary judgment:

1. the Jones Act negligence claim fails because: (a) there is a lack of evidence that Defendant's acts or omissions caused Plaintiff's injury; (b) Defendant was not Plaintiff's "employer"; and (c) Plaintiff's injury was caused by natural wave action;

2. the unseaworthiness claim fails because there is a lack of evidence that the *Astrelle* was unseaworthy or that any unseaworthy conditions played a role in Plaintiff's injury;

3. the "Primary Duty Doctrine" bars recovery under the Jones Act negligence claim and unseaworthiness claim; and

4. Defendant has no outstanding obligation to provide maintenance and cure.[1]

### A. Applicable Law

In a case regarding an injury aboard a ship on navigable waters, general maritime law, rather than state law, applies. Kermarec v. Compagnie Gen. Transatlantique, 358 U.S. 625, 628 (1959). The alleged injury in this case occurred aboard a motor yacht on navigable waters. The parties agree that the applicable substantive law is general maritime law. Mot. at 10; Resp. at 2. Therefore, the Court applies general maritime law.

---

[1] Defendant also argues that Plaintiff's theory of unseaworthiness pertaining to missing handrails on the *Astrelle*'s steps affords no relief. Defendant made identical arguments in its Motion to Exclude and/or Limit the Testimony of James W. Allen & Motion to Preclude Reference to Inapplicable Standards [DE 24]. The Court already ruled on these issues in the Order denying that motion [DE 80]. Therefore, this argument is denied as moot.

4

### B. Jones Act Negligence

Defendant makes three arguments in support of summary judgment on the Jones Act negligence claim. First, Defendant argues, "Plaintiff cannot meet his burden of proving that [Defendant] was negligent and that this negligence contributed to his alleged injury." Mot. at 11. Second, Defendant contends it cannot be liable for Jones Act negligence because it was not Plaintiff's "employer" within the meaning of the Jones Act. Id. at 14. Third, Defendant argues that "the incident was caused by the impact of a wave upon the vessel," which precludes Defendant's liability for negligence. Id. at 17.

#### 1. Proof of Defendant's Negligence

Pursuant to the Jones Act, "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. "Under familiar principles of negligence, in Jones Act cases, there must be some evidence from which a jury can infer that the unsafe condition existed and that the owner either knew or, in the exercise of due care, should have known of it." Perry v. Morgan Guar. Trust Co. of N.Y., 528 F.2d 1378, 1379 (5th Cir. 1976). "[L]iability exists if the negligence contributed, even in the slightest, to plaintiff's injury." Santana v. United States, 572 F.2d 331, 335 (1st Cir. 1977) (citing Rodgers v. Mo. Pac. R.R., 352 U.S. 500 (1957)); Perry, 528 F.2d at 1380 ("only the slightest negligence need be shown"); see also Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523 (1957) (applying the FELA standard in Rodgers, 352 U.S. 500, to Jones Act cases). Yet generally, "mere proof that an accident occurred is not evidence of anyone's negligence." Traupman v. Am. Dredging Co., 470 F.2d 736, 737 (2d Cir. 1972).

Defendant argues that "Plaintiff cannot meet his burden of proving that [Defendant] was negligent and that this negligence contributed to his alleged injury," Mot. at 11, because "there is not a shred of evidence that [Defendant] is liable for negligence," id. at 12. Plaintiff responds that the evidence of Defendant's negligence is that "Defendant knew or should have known about each of the unsafe conditions onboard the *Astrelle* including (1) that the vessel was undermanned; (2) that the crew was overworked; and (3) that the steps to the coach roof were narrow and without a railing, making the steps unreasonably unsafe." Resp. at 5.

The record contains factual disputes as to each of these issues. Compare, e.g., Report of James W. Allen at 5 [DE 18] ("In my opinion the M/Y Astrelle was an unseaworthy vessel due to the workload and being undermanned") and Supplemental Report of James W. Allen at 3 [DE 24-1] ("there is no evidence of a handrail or handhold of any kind . . . [which] is just creating another unseaworthy condition . . . This is an unsafe condition both at sea and in port.") with Rebuttal Report of Thomas E. Danti at 4, 5 [DE 20-1 at 1-9] ("It is my opinion that the vessel Astrelle was in fact properly manned . . ." and "It is my opinion that the incident at issue was not caused by the lack of additional crew or undermanning . . ." and "It is my opinion that the crew was not overworked.") and Supplemental Rebuttal Report of Thomas E. Danti at 3 [DE 30-1] ("It is my opinion that there was no requirement for a handrail at the steps at issue . . ."); compare also Mot. at 4 ¶ 10 ("Neither [Plaintiff] nor his wife thought the steps to the coach roof were dangerous . . .") and id. at 4 ¶ 12 (". . . there was no need for additional crew during the voyage at issue.") with Exhibit A to Resp. at 5 ¶ 10 [DE 31-1] at 10 ("Both [Plaintiff] and Mrs. Cowley testified that the coach roof steps were dangerous . .

6

.") and id. at 6-7 ¶¶ 12, 13 ("'Inadequate crew and the grinding schedule required by the owners and the lack of reasonable relief caused the crew to become exhausted . . .,'" and "Mrs. Cowley testified that additional crew was requested . . ."). Accordingly, as there are disputed issues of material fact as to whether Defendant was negligent, the Court will deny summary judgment on this issue.

### 2. Defendant as Plaintiff's "Employer"

Only a seaman's employer can be liable in negligence under the Jones Act. See 46 U.S.C. § 30104. "Thus, as a prerequisite to recovery under the Act, the plaintiff must establish an employment relationship with the defendant." Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 215 (3d Cir. 1993).

When determining whether such an employment relationship exists, courts "apply ordinary principles of the law of agency adjusted by an eye on the peculiarities of maritime life." Id. Under these principles, it is proper to look to the degree of control the principal exercises over the agent. Id. (citing Restatement (Second) of Agency § 220(1) (1958)). "[F]actors indicating control include payment, direction, supervision and the power to hire or fire[, as well as] the power to determine the route of the ship and the activities of the crew." Id.; see also Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 795 (1949) ("One must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?").

Defendant argues that Plaintiff was employed by SeaSafe, and not by Defendant, and therefore cannot maintain a Jones Act claim against Defendant. Mot. at 14 (citing Cowley Deposition [DE 23-1] at 161:20-23). However, Plaintiff's deposition

7

testimony that he was employed by SeaSafe is not dispositive of whether there was an employer-employee relationship between Defendant and Plaintiff. Defendant's motion itself admits that Defendant retained Plaintiff through SeaSafe. Mot. at 2 ¶ 4. The motion further notes that Plaintiff was responsible for all aspects of the *Astrelle*'s management, operation, navigation, repair, and maintenance . . . And the owners relied upon [Plaintiff] to keep the vessel maintained, repaired, properly manned and outfitted for her intended service." Id. at 2 ¶ 5; see also Professional Service Agreement [DE 40-4][2] (agreement between Plaintiff and Defendant, stating Plaintiff and Mrs. Cowley "will perform the operation and maintenance services to the best of their abilities and in accordance with good seamanship standards."). Furthermore, attached to his response, Plaintiff submits a Declaration of William T.F. Cowley Under Penalty of Perjury [DE 31-1 at 13-19][3] ("Cowley Declaration"), representing that Defendant, through the Collises, was responsible for deciding whether to hire additional crew members, see id. ¶¶ 26-29. The Professional Services Agreement provides that

---

[2] The Court notes that the copy of the Professional Services Agreement includes a signature by Plaintiff by not by Defendant. Nevertheless, Defendant does not contest the validity of the contract. Moreover, Defendant is the party responsible for attaching this agreement to its reply.

[3] In its reply, Defendant requests that the Court disregard the Cowley Declaration as a sham declaration. Under the sham affidavit/declaration doctrine, "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). However, as more fully described in the remainder of this Order, the record contains numerous disputed issues of material fact. The Cowley Declaration does not create any new issues that did not already exist. Therefore, the Court will not disregard the declaration as a sham.

8

Plaintiff "will receive prior approval from [Defendant] before engaging such additional personnel," Prof. Servs. Agmt. at 1, demonstrating that at the very least, any decisions regarding hiring additional crew were subject to Defendant's consent and therefore not totally in Plaintiff's control. Further, Plaintiff declared, "[Defendant] controlled my work schedule, defined my time and duties aboard the M/Y Astrelle, and was in complete control of the M/Y Astrelle's operating schedule." Cowley Decl. ¶ 5. The record also includes evidence that Defendant had the power to terminate Plaintiff's employment. See Prof. Serv. Agmt. (agreement between Plaintiff and Defendant, stating, "Both corporations agree to a thirty-day termination notice"); Cowley Dep. at 71:18-19 ("how can they fire me for something that happened on their boat?"). Accordingly, as there are disputed issues of material fact as to whether Plaintiff had an employment relationship with Defendant, the Court will deny summary judgment on this issue.

### 3. Wave Action

Defendant cites various cases from across the country for the proposition that boat operators are not negligent when an injury is caused by wave action. Mot. at 15 (citing Wille v. Dana, 962 F. Supp. 1334 (D. Or. 1997); Aronowitz v. Molero, 273 F. Supp. 226 (E.D. La. 1967); Summers v. Motor Ship Big Ron Tom, 262 F. Supp. 400 (D.S.C. 1967); Trapani v. State Farm Fire & Cas. Co., 424 So. 2d 449 (La. Ct. App. 1982); Craig v. Kaplan, 48 Cal. Rptr. 105 (Cal. Ct. App. 1965)). Defendant argues that because Plaintiff "testified that there was nothing unusual with the weather on the day of the alleged incident and that the incident was caused by the impact of a wave upon the vessel," Mot. at 17, the Court should grant Defendant summary judgment on the negligence claim. Yet, although Plaintiff's testimony suggests a wave could have

9

contributed to his injuries, his testimony also suggest that the condition of the steps, his fatigue due to being overworked, and the undermanning also could have contributed. See, e.g., Cowley Dep. at 122:12-22 ("Q: Do you attribute your incident to water on that nonskid surface, or did you just miss the step? A: "No. As I stepped off, as I put my foot, because you can't put your whole foot because the step is only about this wide, so you put your heel down, the boat just made, we had the extra – because the boat was steady, but every so often you get a bigger wave, the boat just did one of those things, and off I went."); Cowley Dep. at 118:17-24 ("They've got two steps, they've got no rail in place to hold on to, so when you step off, you step straight on to that little step. . . ."); Cowley Decl. ¶ 37 ("I absolutely attribute my injury to the fact that I was tired, overworked and didn't have a qualified mate or crewman to help me carry the load on the strenuous trip South."). Accordingly, the Court will deny summary judgment on this issue.

### C. Unseaworthiness

"[T]he classic case of unseaworthiness arises when the vessel is either insufficiently or defectively equipped." Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 726 (1967). "Unseaworthiness extends not only to the vessel but to the crew." Id. at 727. For instance, an incompetent crew or the lack of adequate crew can make a vessel unseaworthy. See id. at 727 n.4. Additionally, to recover for injuries in an unseaworthiness claim, a plaintiff must show that the unseaworthy condition caused his injuries. Oxley v. City of New York, 923 F.2d 22, 26 (2d Cir. 1991) (citing Poignant v. United States, 225 F.2d 595, 597 (2d Cir. 1955)).

Defendant argues that Plaintiff's unseaworthy claim fails because "there was no

unsafe condition or defect aboard the *Astrelle* that played *any* role whatsoever in causing Plaintiff's injuries." Mot. at 13. However, Plaintiff has presented evidence that the *Astrelle* was unseaworthy due to: (1) an inadequate number of crew members; (2) Plaintiff being overworked; and (3) the lack of handrails on the steps. See *supra*. Though Defendant disputes Plaintiff's allegations, disputed facts are for a jury to decide, and summary judgment on the unseaworthiness claim is inappropriate.

### D. Primary Duty Doctrine

According to the Primary Duty Doctrine, "a seaman-employee may not recover from his employer for injuries caused by his own failure to perform a duty imposed on him by his employment." Bernard v. Maersk Lines, Ltd., 22 F.3d 903, 905 (9th Cir. 1994); see also Walker v. Lykes Bros. S.S. Co., 193 F.2d 772 (2d Cir. 1952) (seaman cannot recover for his injuries when he breaches a duty he has "consciously assumed as a term of his employment"). Plaintiff's injuries allegedly arose because the vessel was undermanned, he was overworked, and the vessel's stairs were unsafe. Defendant argues that the primary duty doctrine bars the Jones Act negligence and unseaworthiness claims based on these alleged defects because Plaintiff "was responsible for all aspects of the vessel's management and operation . . . includ[ing] both staffing the vessel and scheduling work hours." Mot. at 14. However, the record demonstrates disputed issues of fact as to who was responsible for each of the conditions alleged as the basis for these claims.

For instance, contrary to Defendant's position, there is record evidence that Plaintiff was not solely responsible for manning decisions aboard the *Astrelle*. The

11

Professional Service Agreement provides that Plaintiff "will receive prior approval from [Defendant] before engaging . . . additional personnel," Prof. Serv. Agmt. at 1, and suggests that this will be the case when "additional crew members [are] required for special occasion," id. At the very least, this language suggests that Plaintiff did not have full control over hiring decisions at all times. Additionally, Plaintiff has suggested that the Collises gave him the impression that any requests for additional crew other than a "kid off the dock" would be denied. See, e.g., Cowley Dep. at 51.

Furthermore, the facts are not undisputed regarding whether Plaintiff was solely responsible for his work schedule. According to Plaintiff's expert, Mr. Allen, "[i]t is the owners['] duty to supply an adequate crew to the vessel[, and] . . . a fatigue factor was not considered when another crewman was recommended by Captain Cowley." Supplemental Report of James W. Allen at 3 [DE 24-1]. Defendant suggests Plaintiff controlled his own hours, but the Collises required Plaintiff and Mrs. Cowley to make the trips North and South every year within certain time limits. See Cowley Decl. ¶¶ 18, 19. In his Declaration, Mr. Cowley states, "The trip South was dictated by the owners' express rule that the vessel was to be returned to Palm Beach as soon as possible and without spending more than one night in port per leg of the trip . . . to avoid paying dockage fees." Id. ¶ 18.

Finally, Defendant does not suggest that Plaintiff had any responsibility with regard to installing or recommending the installation of handrailing on the *Astrelle*'s steps. Accordingly, as issues of material fact exist as to which party bore responsibility for each of the conditions that allegedly caused Plaintiff's injuries, the Court will deny summary judgment based on the Primary Care Doctrine.

12

### E. Maintenance and Cure

A shipowner has a duty to pay maintenance and cure when a seaman suffers an injury while serving the ship. Aguilar v. Standard Oil Co. of N.J., 318 U.S. 724 (1943). "Maintenance" is a living allowance provided while the seaman is ashore recovering from the injury. Vaughan v. Atkinson, 369 U.S. 527, 531 (1962). "Cure" covers the medical expenses incurred in the seaman's treatment for his injuries. See Clamar S.S. Corp. v. Taylor, 303 U.S. 525, 528 (1938). The shipowner's duty to provide maintenance and cure continues until the seaman reaches maximum medical improvement. Vella v. Ford motor Co., 421 U.S. 1 (1975). The seaman has reached maximum medical improvement when his condition will not continue to improve with additional medical treatment. Id. at 6; Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979). The seaman has also reached maximum medical improvement even if he continues to receive medical treatments as long as those treatments will only be palliative, meaning that they reduce pain or intensity without curing the underlying problem. Pelotto, 604 F.2d at 400. Therefore, a seaman who reaches maximum medical improvement but continues to receive palliative treatment is not entitled to maintenance and cure. Id.

#### 1. Cure

Defendant argues that it no longer has any duty to provide cure because Plaintiff "is current in all treatments and there are no outstanding overdue medical care expenses or reimbursements." Mot. at 20. Plaintiff responds that Defendant's insurance provider has only reimbursed Plaintiff's out-of-pocket expenses thus far.

13

Resp. at 16 (citing Cowley Dep. at 113:18-114:11). Plaintiff declares that he has incurred $350,092.52 in medical expenses, but that as of December 2010, Defendant had only reimbursed Mr. Cowley for $6,210.48. Resp. at 16 (citing Cowley Decl. ¶ 38). Defendant makes no argument in reply. Therefore, the undisputed facts fail to establish that Defendant owes no further duty to pay cure, and the Court will deny summary judgment on this issue.

### 2. Maintenance

As for maintenance, Defendant argues that it has no outstanding duty to provide maintenance payments because it already paid $50.00/day for all days on which Plaintiff was entitled to such payments. Mot. at 20. Plaintiff responds that he did not receive maintenance payments for 248 days. Resp. at 17 (citing Compl. ¶ 23 and Ex. A to Resp. at 10-11 ¶ 22). Defendant contends that these were days on which Plaintiff was still employed and receiving regular wages, and that "whatever maintenance obligations Defendant may have had during the contested period, . . . were satisfied through the payment of wages." Reply at 8.

The obligation to pay maintenance is distinct from the obligation to perform under an employment contract. See De Zon v. Am. Pres. Lines, 318 U.S. 660, 667 (1943). "When the seaman becomes committed to the service of the ship the maritime law annexes a duty that no private agreement is competent to abrogate, and the ship is committed to the maintenance and cure of the seaman for illness or injury during the period of the voyage, and in some cases for a period thereafter." Id. Maintenance payments "are held forfeit only under certain well-defined and narrowly limited circumstances." Oswalt v. Williamson Towing Co., Inc., 488 F.2d 51, 53 (5th Cir. 1974).

14

Consistent with these principles, a seaman is entitled to maintenance in addition to his regular wages. Crooks v. United States, 459 F.2d 631, 635 (9th Cir. 1972) ("The better rule, in our judgment, is that the maintenance obligation is independent of that to compensate for lost wages and exists without regard to the fact that lost wages may be computed on the basis of employment ashore.").

In its reply, Defendant does not argue otherwise, but rather suggests that it was under no obligation to pay Plaintiff's wages, but paid anyway, and that the wage payments should therefore satisfy Defendant's maintenance obligations. Defendant submits no dollar figures in support of this argument to demonstrate that the wages payments covered the maintenance amount. Nor does Defendant demonstrate that Plaintiff was not entitled to his wages. Defendant merely states, "Although Plaintiff may not have been entitled to wages, he was nonetheless paid the same." Reply at 8. As such, with respect to this argument, the Defendant has not met its burden to " identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Accordingly, the Court will deny summary judgment on this issue.

### F. Punitive Damages

Finally, in his response, Plaintiff writes that he "is entitled to punitive damages as Defendant's withholding of maintenance was willful and capricious." Resp. at 18. Defendant argues in its reply that Plaintiff is not entitled to punitive damages because he did not request punitive damages in his Complaint. Reply at 9.

Though there is no explicit request for punitive damages in Plaintiff's Complaint,

15

see Compl., this does not bar a punitive damages award. A pleading must put a defendant on notice of the particular relief sought, Fed. R. Civ. P. 8(a), but a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," Fed. R. Civ. P. 54(c). Further, courts have awarded punitive damages in cases where plaintiffs have not requested punitive damages in their complaints. See, e.g., Bowles v. Osmose Utils. Servs., 443 F.3d 671, 675 (8th Cir. 2006) (awarding punitive damages where complaint did not call for punitive damages because defendant gave plaintiff notice of intent to seek punitive damages prior to trial); see also Teel v. United Techs. Pratt & Whitney, 953 F. Supp. 1534, 1539 (S.D. Fla. 1997) ("By itself, Rule 8(a)(3) does not require that punitive damages ever be pleaded, principally because [of] Rule 54(c) . . . ").

Under Eleventh Circuit precedent, punitive damages are appropriate if the complaint alleges conduct that supports a claim for punitive damages. Scutieri v. Paige, 808 F.2d 785, 790-93 (11th Cir. 1987). Like Scutieri, where punitive damages were appropriate because the complaint alleged that the defendants "acted intentionally and maliciously, wantonly, willfully, in bad faith, with gross and reckless disregard for the rights and interest of the Plaintiffs . . . [and claimed that the defendant's conduct was] so flagrant and wanton as to justify an award of punitive damages," id., Plaintiff's Complaint in this case alleges that Defendant's "delay, failure and/or refusal to pay Plaintiff's entire cure is, moreover, willful, arbitrary, capricious, and in disregard of Plaintiff's rights a seaman," Compl. ¶ 60. Such allegations are sufficient to support a claim for punitive damages. To the extent that Defendant contests the truth of these allegations, it will be free to argue its case to the jury at trial.

16

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant Sunset Yacht Charters, Inc.'s Motion for Summary Judgment [DE 23] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 21st day of July, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF